UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION

Case No. 07-14278-CIV-GRAHAM/LYNCH

WILLIAM KORNFIELD, Individually and
on Behalf of All Others Similarly
Situated,

     Plaintiffs,

vs.

OPTEUM INC., ROBERT E. CAULEY,
PETER R. NORDEN, JEFFREY J. ZIMMER,
MARTIN J. LEVINE, KEVIN I. BESPOLKA,
MAUREEN A. HENDRICKS, W. CHRISTOPHER
MORTENSON, BUFORD H. ORTALE,
FLAGSTONE SECURITIES, LLC, and
BB&T CAPITAL MARKETS,

     Defendants.
_____/


Case No. 07-14305-CIV-GRAHAM/LYNCH

RICHARD and LINDA COY, Individually and
on Behalf of All Others Similarly
Situated,

     Plaintiffs,

vs.

OPTEUM INC., ROBERT E. CAULEY,
PETER R. NORDEN, JEFFREY J. ZIMMER,
MARTIN J. LEVINE, KEVIN I. BESPOLKA,
MAUREEN A. HENDRICKS, W. CHRISTOPHER
MORTENSON, BUFORD H. ORTALE,
FLAGSTONE SECURITIES, LLC, and
BB&T CAPITAL MARKETS,

     Defendants.
_____/

<u>ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFF
AND APPROVING LEAD COUNSEL</u>

**THIS CAUSE** came before the Court upon the Parties' Joint
Motion for Consolidation and for Order Setting Briefing Schedule
[D.E. 10], Motion to Consolidate Cases by the International
Brotherhood of Electrical Workers Local 98 [D.E. 13] and a Motion
to Consolidate Cases by the Kornfeld Plaintiffs [D.E. 15].  Also
before this Court are three Motions from Kornfeld Group
("Kornfeld"), Opteum Investors Group ("OIG") and the International
Brotherhood of Electrical Workers, Local 98, ("IBEW") seeking to be
Appointed as Lead Plaintiff and for Approval of Selection of Lead
Counsel [D.E. 13, 19, 22].  Finally, the Kornfeld Group has filed
a Motion Seeking Leave to File Sur-Reply in Response to arguments
raised by the Opteum Investor Group [D.E. 32].

**THE COURT**, has considered the Motions and the pertinent
portions of the record, and is otherwise fully advised in the
premises.

## I. <u>BACKGROUND</u>

This matter was filed by William Kornfeld, individually and,
on behalf of other similarly situated investors who purchased
common stock issued by Defendant Opteum Inc., ("Opteum" or
"Company") in Opteum's Initial Public Offering (IPO), Secondary
Offering, or in the sale of Opteum's securities on the open market
[D.E. 1].  The Plaintiff-investors allege, <u>inter alia</u>, that the
Defendants issued false and misleading statements in the

-2-

Registration Statement and Proxy-Prospectus in connection with each of its public offerings.

The Parties seek to consolidate this matter with the matter of <u>Richard and Linda Coy, Individually and Behalf of All Others Similarly Situated v. Opteum   Inc., Robert E. Cauley, Peter R. Norden, Jeffrey J. Zimmer, Martin J. Levine, Kevin I. Bespolka, Maureen A. Hendricks, W. Christopher Mortenson, Burford H. Ortale, Flagstone Securities, LLC., and BB&T Capital Markets</u>, Case No. 07-14305-CIV-GRAHAM ("Coy Action").   The Parties assert that the instant action and the Coy Action are both class action securities fraud cases brought by the Company's shareholders against Opteum, certain of its officers and directors, and its lead underwriters. The Parties further assert that the actions both allege violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, Rule 10b-5 of the Rules promulgated under the Exchange Act, and sections 11 and 15 of the Securities Act of 1933.   Finally, the Parties assert that the cases are based upon a common set of underlying   factual   allegations   arising   from   alleged misrepresentations and omissions related to the Company's ability to earn profits.

In addition, three Plaintiff groups have filed Motions for Appointment as Lead Plaintiff and to have their chosen Counsel Appointed as Lead Counsel.   The Kornfeld Group, OIG and IBEW all seek to be named Lead Plaintiff in this matter.   Both the Kornfeld Group and OIG claim that they are the Plaintiff's group with the

largest financial interest in this matter.   IBEW, on the other hand, asserts that it should be appointed the lead plaintiff as it is the only institutional plaintiff in this matter.

## II.   **LAW & DISCUSSION**

### A. Consolidation

All of the Parties seek to have this matter consolidated with the Coy action.   Consolidation is appropriate pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, when "actions involve a common question of law or fact."   In addition, the Private Securities Litigation Reform Act ("PSLRA"), which by all accounts pertains to this action, refers to consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

As all Parties are in agreement that the above-captioned actions should be consolidated, and given that the actions clearly involve a common question of law or fact, the Court will grant the Parties' Joint Motion to Consolidate [D.E. 10].

### B.   Appointment of Lead Plaintiff

The Court will next turn to the question of appointment of Lead Plaintiff in this matter. The PSLRA provides that the court shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of the class members. 15 U.S.C. § 78u-4(a)(3)(B)(I). In determining the "most adequate plaintiff,"

the PSLRA states the following:

> ...[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-
>
> (aa) has either filed the complaint or made a motion in response to a notice ...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

These three presumptions, however, may be rebutted by proof that the proposed lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and (bb).

As stated above, three Plaintiff groups have filed Motions seeking Appointment as Lead Plaintiff. As there were competing Motions for Appointment of Lead Plaintiff, on February 29, 2008, the Court held a hearing on the Motions for Lead Plaintiff. After hearing from the three Plaintiff groups seeking to be designated lead plaintiff and the Defendant Opteum Company, the Court granted the Parties additional time to file supplemental materials in support of their respective Motions. On March 14, 2008, the OIG Plaintiffs filed Supplemental Authority in support of their position [D.E. 37]. The Court is now ready to appoint Lead

Plaintiff in this matter.

1) The Kornfeld Group

The Kornfeld Group, which consists of three plaintiffs, alleges that it has suffered the greatest financial loss and represents its losses to total $1,310,749.40. In its Complaint, the Kornfeld Group asserts claims under §§ 11, 12(a)(2) and 15 of the Securities Act, and Sections 10(b) and 20(a) of the Exchange Act. The Complaint purports to allege claims on behalf of all persons who purchased or otherwise acquired stock of Opteum in connection with, or traceable to, the Company's initial Public Offering and/or Secondary offering, and including those who purchased shares of the Company in the open market between November 3, 2005 and May 10, 2007.

The Kornfeld Complaint alleges that the Company's initial public offering (IPO) was made in mid-September 2004 at the price of $14.50 per share. The Kornfeld Plaintiffs allege that the statements made in the IPO prospectus filed on September 17, 2004 and Registration Statement were materially false and misleading. The Kornfeld Plaintiffs further allege that the Secondary Offering in December 2004 which offered a per share price of $15.50, was also issued with a Registration Statement and Proxy-Prospectus that were substantially similar to the Original IPO Offering Statements and were also materially false and misleading. Finally, the Kornfeld Plaintiffs identify November 3, 2005 as the inception of the open market purchaser Class Period and May 10, 2007, as the

close of the period.

The Kornfeld Plaintiffs have filed a copy of the notice issued after the Complaint was filed, identifying the purported plaintiff class as "...shareholders who purchased the common stock of [Opteum Inc.] in connection with, or traceable to, its September 2004 Initial Public Offering and/or the December 2004 Secondary Offerings...and including shareholders who purchased shares in the open market between November 3, 2005 and May 10, 2007, inclusive (the "Class Period").

      2)   The Opteum Investors Group (OIG)

OIG, which is comprised of four separate investor groups, estimates its damages to be $598,688.77. <u>See,</u> [D.E. 19]. In addition, OIG has filed an Opposition to the Kornfeld Group's Motion for Appointment as Lead Plaintiff, wherein OIG asserts that the Kornfeld Plaintiffs have miscalculated their potential losses and, in fact, are not the Plaintiffs with the largest financial interest [D.E. 26-1]. According to OIG, the bulk of the Kornfeld Plaintiffs' damages arise from transactions that occur prior to the start of the defined Kornfeld 10(b) class period. OIG argues that, as a result, those transactions may not be measured as 10(b) damages because they are not within the class period. OIG further argues that the Kornfeld purchases made after the secondary public offering on December 15, 2004, are not traceable to either the first or second Opteum public offering and therefore are not recoverable as section 11 damages, either. Thus, OIG asserts that

when the proper 10(b) and § 11 methods for calculating damages are applied to the Kornfeld losses, the Kornfeld Group only has losses totaling "...slightly above $200.000.00." [D.E. 26-1 at 2].

OIG further argues that as Kornfeld's pre-class transactions are not traceable to any Section 11 claim that the Kornfeld Group should not be appointed as Lead Plaintiff as it lacks standing to present all of the claims on behalf of the entire class. OIG also asserts that the pre-class transaction purchases by Kornfeld subject it to unique defenses, and thus Kornfeld is unable to satisfy the requirements of Fed.R.Civ.P. 23, as it is unable to adequately represent the class.

> 3) International Brotherhood of Electrical Workers, Local 98 (IBEW)

The IBEW calculates its losses to total $49,331.57, and thus concedes that it is not the potential lead plaintiff with the largest financial interest, but argues that preference under the PSLRA is given to institutional plaintiffs, and thus IBEW should be appointed as lead plaintiff [D.E. 13, 14].

The IBEW has also filed an Opposition to the other Plaintiff Groups' Motions to be Appointed Lead Counsel [D.E. 27], wherein it asserts that the Kornfeld Group and OIG have failed to demonstrate to this Court that they possess the requisite education and experience in the stock market and securities class actions to ensure that they can adequately represent the interest of the class.

-8-

Initially, the Court notes that in this matter, no party has raised a question as to whether any of the competing lead plaintiffs have timely filed their Motions seeking to be appointed lead Plaintiff. The record, in fact, indicates that all three potential lead plaintiffs did file their motions timely, and thus the Court finds that all three Plaintiffs satisfy the first prong for determining the most adequate plaintiff under the PSLRA.

    a)   Calculation of Plaintiff with largest financial interest

The Court, therefore will focus its inquiry on which of the potential lead plaintiffs has the largest financial interest in this litigation. It has been stated that the most important factor in determining the lead plaintiff is the amount of financial interest claimed. See, Sherleigh Assoc. LLC v. Windmere-Durable Holdings, Inc., 184 F.R.D. 688, 692 (S.D.Fla.1999) (choosing as lead plaintiff the individual who has the largest financial interest); Ehlert v. Singer, 185 F.R.D. 674, 677 (M.D.Fla.1999) (stating that the bottom line is that "the plaintiff with the most at stake is usually the one that is best able to negotiate and oversee counsel's actions"). However, the PSLRA does not provide a formula for determining the plaintiff with the largest financial interest. Rather, as stated by the third circuit in In Re Cendant Corp. Litigation, 264 F. 3d 201 (3rd Cir. 2001),

> The Reform Act provides no formula for courts to follow in making th[e] [largest financial interest] assessment, but we agree with the many district courts that have held that courts should consider, among other things: (1) the number of shares that the movant purchased during the

putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs. See Lax v. First Merch. Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *5 (N.D.Ill. Aug. 11, 1997); see also In re Nice Sys. Sec. Litig., 188 F.R.D. 206, 217 (D.N.J.1999) (citing Lax for this proposition); In re Olsten Corp. Sec. Litig., 3 F.Supp.2d 286, 295 (E.D.N.Y.1998) (same).

In this Circuit, some courts in making this determination have considered: (1) the number of shares purchased during the class period; (2) the amount of the investment, and (3) the "alleged losses." See Miller v. Dyadic, 2007 Wl 4754041 *2 (S.D. Fla., December 14, 2007) citing Piven v. Sykes Enters. Inc., 137 F.Supp.2d 1295, 1302-03 (M.D.Fla.2000)).

In addition, the Court finds guidance in the opinion issued by a district court in the Southern District of New York wherein the court examined competing motions by plaintiffs seeking to be appointed lead plaintiff in an action under the PSLRA. See, In re Fuwei Films Securities Litigation, 247 F.R.D. 423, (S.D.N.Y. 2008). In that action, certain plaintiffs argued that the presumptive lead plaintiff had "grossly overstated" his financial interest in the case by failing to use the damage formula calculation mandated by § 11. Id. at 438.   The court rejected those arguments and noted that the non-presumptive lead plaintiffs had not cited any authority for the proposition that, on a motion to appoint lead plaintiff under the PSLRA, that the damages calculation as set forth under § 11 was the proper method for computing the financial interest. Id.

-10-

In this case, it is unquestionable that the Kornfeld Plaintiffs have asserted that they have the largest financial interest as they allege losses totaling over 1.3 million dollars, as opposed to the lower damages calculated by OIG and IBEW. In addition, the Court notes that even OIG admits that the Kornfeld Plaintiffs have losses totaling over $230,000.00 for the 10(b) class period. Thus, this is not a case where the proposed lead plaintiff, even under OIG's analysis, is wholly outside of the identified class period of the action, as it is undisputed that the Kornfeld Plaintiffs purchased all of the shares used to calculate their losses, after the Initial Public Offering of September 16, 2004 and before the expiration of the class period of May 10, 2007. Accordingly, the Court finds that it need not reach OIG's arguments regarding whether the Kornfeld Plaintiffs will actually be able to recoup their damages under section 11 for purchases made after the Secondary Offering in December 15, 2004, and before the 10(b) Class Period, for such a determination is premature. Whether the Kornfeld Plaintiffs' damages may or may not be traceable to a particular offering for purposes of section 11, is not a determination that the Court should make at this point. Indeed, the Court should not prematurely limit any potential recovery or damages for the Plaintiffs in order to determine who is the most adequate Plaintiff.

In this regard, the Court agrees with the reasoning in <u>Parker Freeland, et al., v. Iridium World Communication, LTD.</u>, 233 F.R.D.

40 (D.D.C. 2006) wherein the court examined whether it should deny class certification of a sub-class where defendants asserted that the members of the sub-class were unable to trace their stocks purchased on the open market after a secondary offering under section 11. Id. at 45. In rejecting the defendants' argument, the court stated that any difficulty by individual class members in tracing their particular aftermarket-purchased shares to the registration statement is a secondary issue to be resolved after the predominant issue of the defendant's liability had been resolved. Id.

Other Courts have reached similar conclusions in determining that arguments regarding whether plaintiffs will prevail on claims subject to traceability defenses are premature at the motion to dismiss stage. In Re Suprema Specialties, Inc. Sec. Litig, 438 F.3d 256, 274 n. 7 (3rd Cir. 2006), for example, the third circuit stated,

> We agree with the District Court that plaintiffs'
> allegations regarding the purchases were sufficient to
> survive the motions to dismiss... We...hold that
> plaintiffs' assertions of purchases "in" and "traceable
> to" the [defendant's] stock offerings were sufficient at
> the pleading stage....The question here is... a factual
> one, to be resolved through discovery, as to whether
> plaintiffs can demonstrate that the shares they allegedly
> purchased are in fact traceable to the registration
> statement alleged to be false and misleading...If,
> ...plaintiffs have misrepresented the circumstances of
> their stock purchases and do not in fact have standing,
> appellees can raise that matter at the summary judgment
> stage after discovery.

Id. (citations omitted)(quotations in original). Accord, DeMaria v. Andersen, 318 F.3d 170, 176 (2d Cir.2003); Lee v. Ernst & Young, LLP, 294 F.3d 969, 976-77 (8th Cir.2002); Joseph v. Wiles, 223 F.3d 1155, 1159 (10th Cir.2000).

Thus, this Court is unpersuaded that, at this early point in the litigation, which is even earlier than the motion to dismiss stage, it should calculate the Kornfeld Plaintiffs' damages when the arguments advanced by the Kornfeld Plaintiffs in support of their damages calculations do not call into question the ability of the Kornfeld Plaintiffs to represent the class. The Court finds that such a result in this case, is in line with the PSLRA's goal of insuring that the litigation is driven not by attorneys, but rather by an entity whose sophistication and interest in the litigation are sufficient to permit that entity to function as an active agent for the class. See, e.g., Eastwood Enterprises, LLC. v. Farha, 2008 WL 687351, *3 (M.D. Fla., March 11, 2008)(discussing goal of PSLRA when determining most adequate lead plaintiff).

OIG cites to In re Pfizer Inc., Sec., Litig., 233 F.R.D. 334, 343 (S.D.N.Y) for support of its argument that the Kornfeld Plaintiffs' calculation of damages is replete with errors which render its application unreliable [D.E. 29-1 at 2]. However, the instant case is distinguishable from In Re Pfizer as in that case, the court found that the plaintiff who asserted that it had the largest financial loss, had over calculated its damages by more than $10 million dollars, by employing the wrong damages

-13-

calculation. The Court does not find that the errors noted by the court in Pfizer are akin to the alleged errors made by the Kornfeld Plaintiffs, herein. In addition, the Kornfeld Plaintiffs have not conceded that their calculations are inaccurate. In any event, as previously stated, the Court is not willing to determine at this stage that the Kornfeld Plaintiffs have misstated their damages.

Finally, in Grand Lodge of Pennsylvania v. Coast Financial Holdings, Inc., et al., 550 F. Supp. 2d 1363 (M.D. Fla. 2008), which OIG submitted to this Court in its supplemental filings after the hearing, although the district court dismissed the section 11 claims of certain plaintiffs, that ruling, again, was made on a motion to dismiss, as opposed to a Motion for Appointment as Lead Plaintiff, and thus is not determinative of the issue at bar.

ii) Standing of Plaintiff Groups

The OIG Plaintiffs also assert that the Kornfeld Plaintiffs should not be appointed lead plaintiff as they are unable to trace the bulk of their losses to either the IPO or the Secondary Offering and thus will not be entitled to assert § 11 claims. According to OIG, because of this limitation, the Kornfeld group Plaintiffs are not the most adequate lead plaintiff as they will not have standing to assert claims on behalf of the OIG Plaintiffs who may trace their claims directly to the IPO and therefore unquestionably assert §11 claims.

However, this argument was also examined and rejected by the court in In re Fuwei Films Securities Litigation, 247 F.R.D. 423,

-14-

(S.D.N.Y. 2008).  The court in Fuwei first noted that the Second
Circuit has held that there is no requirement that a court select
a lead plaintiff with standing to assert every possible claim
against every defendant, nor does the presumptive lead plaintiff
fail to satisfy the typicality prong if he or she cannot assert
every possible claim.   Accord, In Re Global Crossing, Ltd.
Securities, 313 F. Supp 2d 189 (S.D.N.Y. 2003)(finding nothing in
the PSLRA requires that lead plaintiffs to have standing to assert
all claims on behalf of all of the potential classes and subclasses
of holders of different categories of security at issue in the
case).  Indeed, as stated by a district Court, "the imposition of
any such requirement would be at odds with the purposes of the
[PSLRA] statute, since in the case of large alleged frauds
involving issuers of many classes of securities, the consequence
would be either the appointment of a large number of lead
plaintiffs (undermining the goal of a cohesive leadership and
management group) or the premature breakdown of the action into an
unmanageable number of separate cases brought by different lead
plaintiffs on behalf of each potential subclass of securities
holders."  In Re Global Crossing, Ltd. Securities, 313 F. Supp 2d
189, 205 (S.D.N.Y. 2003).  Accordingly, as there is no rule in this
Circuit that requires the Lead Plaintiff to have standing on every
class issue, the Court does not find OIG's arguments in this regard
persuasive.

Further, the cases cited by OIG for support of this argument,

-15-

again, do not address the question of standing in determining a
lead plaintiff under the PSLRA.  Rather, all of the cases cited
addressed the issue at the point that the plaintiffs sought class
certification, upon a defendant's motion to dismiss or for summary
judgment, or on a motion to decertify class. See [D.E. 26-1 at 6].

iii) IBEW as Institutional Investor

Finally, the Court does not find the arguments advanced by
IBEW to be convincing.  As noted by both the Kornfeld Plaintiffs
and OIG, there is nothing in the PSLRA that states that an
institutional investor must be chosen over other investors.  While
it may be true, that the statutory history indicates that Congress
sought to encourage representation of a class under the PSLRA by an
institutional investor, in this case, given the disparity of the
damages alleged by IBEW, in comparison to the other competing lead
Plaintiffs, the Court finds that the interests of the class are
best served by appointing the Plaintiff with the largest alleged
losses and financial interest.  Thus, the Court finds that the
Kornfeld Plaintiffs are the Plaintiffs with the alleged greatest
financial loss and thus are the presumptive lead Plaintiff.  The
arguments advanced by OIG and IBEW do not rebut this presumption.

iv) Lead Plaintiff and Requirement of Rule 23

Under the PSLRA, the presumptive lead plaintiff must also
otherwise satisfy the requirements of Rule 23 of the Federal Rules
of Civil Procedure.  While the PSLRA cites to Rule 23, most courts
have held that the inquiry at the appointment of lead plaintiff

-16-

stage is preliminary in nature, and far less exacting then the standard applied at the time of actual class certification. See, Piven v. Sykes Enterprises, Inc., 137 F.Supp.2d 1295 (M.D.Fla.2000)(citation omitted).

Thus, in this circumstance, Rule 23 requires that: (1) the claims of the proposed lead plaintiff be typical of the class; and (2) the representative will fairly and adequately represent the interests of the class. Id. The requirement of typicality is satisfied where the representative's claims share the same essential characteristics as the claims of the class at large. See, Piven v. Sykes Enterprises, Inc., 137 F.Supp.2d 1295, 1306 (M.D.Fla.2000);(citing Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 n. 14 (11th Cir.2000)).

In this matter, notwithstanding OIG's and IBEW's arguments to the contrary, the Court finds that the Kornfeld Plaintiffs satisfy the Rule 23 requirements sufficiently to be appointed as Lead Plaintiff. Specifically, the Kornfeld Plaintiffs claims share the same essential characteristics of the claims of the class at large. In addition, the defenses that the Kornfeld Plaintiffs may be subject to, are the same defenses that all Plaintiffs will have to overcome. Finally, the Kornfeld Plaintiffs have demonstrated a willingness and ability to vigorously prosecute this action and there has been no evidence that they possess interests antagonistic to those of the other class members.

Accordingly, the Court finds that the Kornfeld Group is the

-17-

most adequate Plaintiff, and therefore designates the Kornfeld Group as the Lead Plaintiff in this action. However, the Court recognizes that certain issues raised in the Parties' filings may be appropriately re-raised at either the motion to dismiss stage or the class certification stage. The Court therefore, leaves open the possibility of reconsidering its decision, herein, at a more appropriate point in the litigation.

## C.   Appointment of Lead Counsel

The PSLRA also vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). As the Court has determined that the Kornfeld Plaintiffs are to be designated the Lead Plaintiffs in this action, the Court must now determine if it should approve the appointment of the Kornfeld Plaintiffs' proposed lead counsel. The Kornfeld Plaintiffs have selected Kahn Gauthier Swick, LLC, and Brower Piven, P.C., to serve as Lead Counsel, and Genovese Joblove & Battista, P.A., to serve a Liaison Counsel for the Class. According to the Kornfeld Plaintiffs, the proposed law firms have prosecuted complex securities actions, as well as, other types of complex class actions. In support of their selection, the Kornfeld Plaintiffs have submitted the firm resumes of all three firms [D.E. 14-4]. The Court has reviewed the resumes and concludes that each firm is experienced in handling class action securities fraud cases. Also, it appears that all three firms are adequately staffed to handle a potentially large class and to manage the case

in accordance with this Court's Orders and the Federal Rules of Civil Procedure.

OIG has argued that the selection of three firms is excessive. However, as noted by the Court in the hearing on this issue, the matter of excessive attorney fees can and will be dealt with by this Court, when and if, the submission of attorney's fees for payment arises. Indeed, the Court is aware of the potential for inflated attorney's fees and costs when multiple firms serve as Lead Counsel. Accordingly, Lead and Liaison Counsel are hereby on notice that the Court will carefully scrutinize and summarily deny any requests for attorney fees that contain duplicative and/or excessive billing, and will consider issuing sanctions against attorneys who engage in such billing practices, if necessary.

Nevertheless, neither OIG nor the IBEW have suggested that the Kornfeld Plaintiffs' proposed counsel are not qualified or experienced enough to adequately represent the potential class members in this action. However, the Court is aware that OIG alleges that one of the firms proposed by the Kornfeld Plaintiffs improperly issued a press release in an effort to solicit investors. See, [D.E. 29-1 at 8]. The Kornfeld Group has filed a Sur-Reply to rebut this claim. Based upon the record, the Court finds no reason to disallow the Kornfeld Group's selected counsel based upon the press release. Therefore, this Court finds that the firms selected by the Lead Plaintiff should be approved pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### III. CONCLUSION

Based upon the foregoing, it is

**ORDERED AND ADJUDGED** that the Parties' Joint Motion for Consolidation and for Order Setting Briefing Schedule [D.E. 10] and Motion to Consolidate Cases by the Kornfeld Group [D.E. 15] both filed in Case No. **07-14278-GRAHAM/LYNCH** are **GRANTED**. The Motion to Consolidate Cases by the International Brotherhood of Electrical Workers Local 98 [D.E. 13] filed in Case No. **07-14278-GRAHAM/LYNCH** is **GRANTED,** in part, to the extent that it seeks consolidation of these matters.   It is further

**ORDERED AND ADJUDGED** that the Parties' Joint Motion for Consolidation and for Order Setting Briefing Schedule [D.E. 5] filed in Case No. **07-14305-GRAHAM/LYNCH** is **GRANTED**.

The matters of William Kornfeld, <u>Individually and on Behalf of All Others Similarly Situated v. Opteum  Inc., Robert E. Cauley, Peter R. Norden, Jeffrey J. Zimmer, Martin J. Levine, Kevin I. Bespolka, Maureen A. Hendricks, W. Christopher Mortenson, Burford H. Ortale, Flagstone Securities, LLC., and BB&T Capital Markets</u>, **Case No. 07-14278-CIV-GRAHAM** and <u>Richard and Linda Coy, Individually and on Behalf of All Others Similarly Situated v. Opteum  Inc., Robert E. Cauley, Peter R. Norden, Jeffrey J. Zimmer, Martin J. Levine, Kevin I. Bespolka, Maureen A. Hendricks, W. Christopher Mortenson, Burford H. Ortale, Flagstone Securities, LLC., and BB&T Capital Markets</u>, **Case No. 07-14305-CIV-GRAHAM** are

hereby consolidated for all purposes pursuant to Federal Rule of Civil Procedure 42(a).  It is further

**ORDERED AND ADJUDGED** that all subsequently filed matters which involve the purchase of Opteum's common stock and that are the result of the alleged fraud of Opteum, its officers or directors, in violation of the Securities Exchange Act of 1934, the Rules promulgated under the Exchange Act and the Securities Act of 1933, shall be consolidated with the instant matters for the purposes of judicial economy.  A Master File Docket number is hereby established for this proceeding.  The Master Docket number shall be No. 07-14278.  The instant matters and any subsequently-filed related matters shall be captioned, "In re Opteum, Inc., Securities Litigation," and shall bear the assigned case number with the designation following the case number of "CIV-GRAHAM."  It is further

**ORDERED AND ADJUDGED** that the Kornfeld Group is hereby designated as Lead Plaintiff in this matter.  The Kornfeld Group's Motion to File a Sur-Reply [D.E. 32] filed in Case No. **07-14278-GRAHAM/LYNCH** is **GRANTED**. The Opteum Investor Group's and IBEW's Motions for Appointment as Lead Plaintiff and For Approval of Lead Counsel [D.E. 19, 22] filed in Case No. **07-14278-GRAHAM/LYNCH** are **DENIED**.  It is further

**ORDERED AND ADJUDGED** that the Kornfeld Group's Motion to File a Sur-Reply [D.E. 11] filed in Case No. **07-14305-GRAHAM/LYNCH** is

**GRANTED.**  It is further

**ORDERED AND ADJUDGED** that the Court approves the Kornfeld Group's selection for Lead Counsel and hereby appoints Kahn Gauthier Swick, LLC, and Brower Piven, P.C., to serve as Lead Counsel, and Genovese Joblove & Battista, P.A., to serve as Liaison Counsel for the Opteum Inc., Securities Litigation.  It is further

**ORDERED AND ADJUDGED** that the Kornfeld Group as Lead Plaintiff shall have thirty (30) days from the date of this Order to file an Amended Consolidated Complaint.  It is further

**ORDERED AND ADJUDGED** that the Defendants shall have thirty (30) days from the date of the filing of the Amended Consolidated Complaint to file an Answer or otherwise respond to the Amended Consolidated Complaint.  Pursuant to the PSLRA, discovery will be stayed pending the resolution of any motion to dismiss in this matter.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29ᵗʰ day of September, 2008.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:  United States Magistrate Judge Lynch
     All Counsel of Record