UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT PIERCE DIVISION

|  |  |  |
|---|---|---|
| **IN RE OPTEUM, INC. SECURITIES LITIGATION** | ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 07-14278-CIV-GRAHAM<br><br>CONSOLIDATED<br><br><u>CLASS ACTION</u> |

_____

**LEAD PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

  A.   Procedural History and Description of Lead Plaintiffs' Claims ......................... 2

III.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO
GRANT PRELIMINARY APPROVAL ........................................................................ 5

  A.   Factors to be Considered by the Court in the Preliminary Approval of a Class Action
  Settlement ......................................................................................................... 5

  C.   The Proposed Settlement is Fair and Warrants the Court's Preliminary Approval ............ 9

    1.   Lead Plaintiff's Likelihood of Success at Trial ........................................... 10

    2.   The Range of Possible Recovery; the Point in the Range of Recovery at Which the
    Settlement is Fair, Adequate, and Reasonable; and the Complexity, Expense, and Duration of
    Litigation ........................................................................................................ 11

    3.   The Stage of Proceedings at Which the Settlement Was Achieved.............................. 12

IV.   THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS
CERTIFICATION UNDER RULE 23(a)..................................................................... 13

  A.   Numerosity and Commonality........................................................................... 13

  B.   Typicality and Adequacy of Representation....................................................... 14

  C.   Predominance of Common Issues and Superiority of the Class Action Mechanism ....... 15

  D.   Lead Plaintiffs' Counsel Should Be Appointed Class Counsel Under Rule 23(g)........... 17

V.   THE PROPOSED FORMS OF NOTICE TO CLASS MEMBERS ARE ADEQUATE. 17

VI.   CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276 (11th Cir. 2007) ................................... 18

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ....................................................................... 13

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) .................... 14

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988)...................................... 6

*Bennett v. Behring*, 737 F. 2d 982 (C.A. Fla. 1984) ................................................................. 9, 11

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979).................................... 10

*Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981)............................................. 7

*Carnegie v. Household Int'l, Inc.*, 371 F. Supp. 2d 954 (N.D. Ill. 2005)....................................... 7

*Carnegie v. Johnson*, No. CV-99-S-3292-NE, 2004 U.S. Dist. LEXIS 29404 (N.D. Ala. Nov. 23, 2004).......................................................................................................................................... 15

*Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209 (S.D.N.Y. 1992)............................ 10

*Cheney v. Cyberguard Corp.*, 213 F.R.D. 484 (S.D. Fla. 2003) ................................................. 13

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (C.A. N.Y. 1974) ............................................. 11

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)............................................................ 7, 11, 15

*Ferguson v. Upscale Saturday Night, Inc.*, 2007 WL 2774196 (M.D. Fla., September 6, 2007) .. 6

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................. 7

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) ................................................ 14

*Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-2152-CIV-GOLD, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) ................................................................................................ 10

*Hernandez v. Tropical Const. & Maintenance Corp.*, 2007 WL 1201143 (M.D. Fla., April 23, 2007)............................................................................................................................................ 6

*In re BellSouth Corp.*, 2006 WL 870362 (N.D. Ga., April 3, 2006) ............................................ 16

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ............................ 18

*In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680 (N.D. Ga. 1999)................................................ 13

*In re Sunbeam Securities Litigation*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001) .............................. 6

*In re Telik, Inc. Securities Litigation*, 576 F.Supp.2d 570 (S.D. N.Y. 2008) ............................. 11

*In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 687 (N.D. Ga. 2002) .......................... 13, 14, 16

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992)........................................................ 6

*Kerr v. City of W. Palm Beach*, 875 F.2d 1546 (11th Cir.1989).................................................. 16

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987) ........................................... 14

*McDermott, Inc. v. Amclyde*, 511 U.S. 202 (1994).......................................................................... 6

*McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424 (E.D. Tex. 2002) .......................................... 7

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................ 16

*Robbins v. Kroger Props. Inc.*, 116 F.3d 1441 (11th Cir.) .......................................................... 10

*Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005)................................... 11

*Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970) .................................. 10

*Woodward v. Nor-Am Chem. Co.*, No. 94-0780-CB-C, 1996 U.S. Dist. LEXIS 7372 (S.D. Ala. May 23, 1996) ........................................................................................................................ 11, 12

**Statutes**

15 U.S.C. § 78z1(a)(7)................................................................................................................. 18

**Other Authorities**

5 James Wm. Moore, *Moore's Federal Practice,* 23.83[1] (3d ed. 2001) ..................................... 7

7 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 22.92 at 407 (4th ed. 2008). 5, 7, 12, 15

Manual for Complex Litigation (Fourth) §§ 21.632-21.633 (2004).............................................. 6

**Rules**

Fed. R. Civ. Pr. 23(a) ................................................................................................ 13, 14, 15, 17

Fed. R. Civ. Pr. 23(b)....................................................................................................... 13, 15, 17

Fed. R. Civ. Pr. 23(c)................................................................................................................ 17, 19

Fed. R. Civ. Pr. 23(e)................................................................................................... 6, 7, 17, 19

Fed. R. Civ. Pr. 23(g)..................................................................................................................... 17

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, lead plaintiffs the Kornfeld Group and additional plaintiff James Winn (collectively, "plaintiffs") respectfully submit this motion for preliminary approval of settlement requesting that the Court preliminarily approve the settlement, approve the form and mailing of the notice of pendency of class action, hearing on proposed settlement and attorneys' fee petition, and right to share in settlement fund (the "notice"), direct publication of the publication notice of pendency of class action, proposed settlement, and settlement hearing (the "publication notice"), and schedule a hearing to determine whether the settlement should be given final approval. Lead plaintiffs further move for the certification of a settlement class and the setting of a hearing date for the final fairness hearing regarding the settlement (the "settlement fairness hearing"). The stipulation of settlement (the "stipulation") is filed contemporaneously herewith. *See* Declaration of Kim E. Miller in Support of Lead Plaintiffs' Motion for Preliminary Approval of Settlement ("Miller Decl."), Ex. 1 (stipulation). All cited provisions of the stipulation shall hereinafter be referred to as "¶__." Lead plaintiffs attach as Exhibit A to the stipulation a [proposed] preliminarily order in connection with settlement proceedings (the "preliminary approval order"), subject to Court approval, setting forth a schedule for all the necessary dates relating to the final settlement fairness hearing.

## I.    INTRODUCTION

The proposed compromise settling all claims for $2,350,000 is made by: (i) lead plaintiffs William F. Kornfeld, Jr., John A. Burns, and David Cottun, (ii) additional plaintiff James Winn, (iii) the class, and (iv) defendants Opteum Inc. ("Opteum"), Peter R. Norden, and Jeffrey J. Zimmer. The proposed stipulation will enable the class to recover $2,350,000.00 in cash (the "settlement fund"), plus interest earned thereon, in exchange for the dismissal of all claims in this action and certain releases. The class refers to all persons or entities who purchased or otherwise acquired Opteum common stock on the open market between September 29, 2005, and August 10, 2007, inclusive (the "class period").

The accompanying stipulation has exhibits attached, including: (1) the preliminary approval order as exhibit A; (2) the notice as exhibit A-1; (3) a proof of claim and release form ("claim form") as exhibit A-2; (4) the publication notice as exhibit A-3; and (5) a proposed final judgment and order of dismissal with prejudice as exhibit B.

The preliminary approval order provides for the members of the class to be apprised of

the terms of the settlement by disseminating the notice *via* first-class mail to all class members who can be identified through reasonable and customary efforts and by publishing the publication notice on the internet *via* the PR Newswire or BusinessWire on three (3) business days. The preliminary approval order also establishes deadlines for the following events necessary to consummate the settlement: (1) class members' requests for exclusion from the class (if any); (2) class members' objections to the terms of the settlement, the plan of allocation, and attorneys' fees and expenses (if any), and (3) class members' submission of claim forms.

As discussed in detail below, plaintiffs and lead plaintiffs' counsel – based on their evaluation of the facts and governing law and their recognition of the substantial risks of continued litigation – submit that the proposed settlement is in the best interests of the class, providing an immediate meaningful recovery for the class. Even if this case were to proceed past the significant hurdles of summary judgment and class certification and plaintiffs were to prevail at trial, defendants could appeal any judgment favorable to the class, delaying any recovery for class members. Accordingly, plaintiffs respectfully move for, and submit this memorandum in support of, this Court's preliminary approval of the settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Procedural History and Description of Lead Plaintiffs' Claims

This litigation commenced in September 2007, when two complaints alleging federal securities violations were filed in the United States District Court for the Southern District of Florida, Fort Pierce Division (the "Court") on behalf of two classes of purchasers of the common stock of Opteum. The two cases were *Kornfeld v. Opteum, Inc. et al.*, Case No. 07-14278-CIV-GRAHAM/LYNCH; and *Coy v. Opteum Inc., et al.*, Case No. 07-14305-CIV-GRAHAM/LYNCH. The first class alleged in both complaints, "the Securities Act class," comprised persons who purchased Opteum, Inc. ("Opteum") securities in connection with its September 17, 2004, Initial Public Offering ("IPO") and/or its December 16, 2004, Secondary Offering ("SPO"). The Securities Act class period was alleged to run from September 17, 2004, through July 24, 2005. The "Exchange Act class" comprised all persons who purchased Opteum shares on the open market between September 29, 2005, and August 10, 2007.

Defendant Opteum is a Real Estate Investment Trust ("REIT") that invests primarily in residential mortgage related securities that are issued by the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Government National

Mortgage Association. Opteum was formed on November 3, 2005, when Bimini Mortgage Management, Inc. ("Bimini") acquired Opteum Financial Services, LLC ("OFS"). Flagstone Securities LLC ("Flagstone") and BB&T Capital Markets ("BB&T") (collectively the "underwriters") served as lead underwriters for the September 17, 2004, IPO, and the December 16, 2004, SPO. In addition to Opteum, Flagstone, and BB&T, there were seven individual defendants named in the action, including Robert Cauley, Peter Norden, Jeffrey Zimmer, Kevin Bespolka, Maureen Hendricks, W. Christopher Mortenson, and Buford H. Ortale.

On September 29, 2008 – following the publication of notice in accord with the provisions of the Private Securities litigation Reform Act of 1995 (the "PSLRA") – the Court consolidated the two federal securities complaints under the caption *In re Opteum Securities litigation*, Case No. 07-14278 CIV-GRAHAM (Consolidated) (the "litigation"). Docket Entry 40. Pursuant to the applicable provisions of the PSLRA, the September 29, 2008, order also appointed the Kornfeld Group as lead plaintiffs and approved their selection of Kahn Gauthier Swick, LLC (now Kahn Swick & Foti, LLC ("KSF")) and Brower Piven, a Professional Corporation ("Brower Piven") as lead counsel.

On October 29, 2008, lead plaintiffs filed a consolidated amended class action complaint for violations of federal securities laws (the "AC").  In the AC, plaintiffs alleged violations of sections 11, 12 (a) (2), and 15 of the Securities Act of 1933, and sections 10(b) and 20(a) of the Securities Exchange Act of 1934. With respect to the Securities Act claims, plaintiffs alleged that defendants failed to disclose that the risk management strategies that were described in the prospectuses were already not working and, therefore, defendants' statements regarding their beliefs, expectations, and goals were false and misleading. With respect to the Exchange Act claims, plaintiffs alleged that defendants failed to disclose that OFS made high risk loans, the percentage of OFS's business that dealt with high risk loans, and that the company was engaging in improper lending and underwriting practices. Plaintiffs also alleged that defendants misrepresented the condition of their internal controls over financial reporting, falsely stated that their financial reports complied with Generally Accepted Accounting Principles ("GAAP"), and misrepresented the effects of the Bimini/OFS merger.

All defendants moved to dismiss the AC pursuant to Fed. R. Civ. P. 12(b)(6).  On September 30, 2009, the Court issued an order granting and part and denying in part these motions. Docket Entry 63. The Court dismissed all of the Securities Act claims as being barred

by the statute of limitations, but rejected defendants' arguments against some of the claims brought under the Exchange Act. Specifically, the Court found that the AC sufficiently pleaded: certain misleading statements and omissions including the loan quality allegations; and scienter as to defendants Norden and Zimmer with respect to certain misleading statements and omissions. The allegations against the underwriters and defendants Bespolka, Hendricks, Mortenson, and Ortale were dismissed entirely on the grounds: that the Underwriters were not involved in the acquisition of OFS in November 2005 and the subsequent statements and public filings that followed; and that scienter was insufficiently pled as to defendants Bespolka, Hendricks, Mortensen, and Ortale.

On October 12, 2009, lead plaintiffs filed a conforming consolidated amended class action complaint for violations of federal securities laws (the "CAC"). The CAC only included those allegations that the Court sustained in the September 30, 2009 Order. On October 23, 2009, remaining defendants Bimini Capital Management, Inc. (formerly Opteum Inc.), Peter E. Norden, and Jeffrey Zimmer filed their respective answers and affirmative defenses. Docket Entries 65, 66. On December 3, 2009, plaintiffs served their first set of interrogatories and requests for production of documents on defendants.

On January 14, 2010, the Court ordered that this case be referred to mediation. Docket Entry 76. The parties met and conferred, and agreed to mediate before the Honorable Nicholas H. Politan, former United States District Court Judge for the District of New Jersey.  The mediation took place on Friday, February 5, 2010, at the offices of Holland & Knight, LLP, in West Palm Beach, Florida. Although extensive negotiations took place, the parties were not able to agree on a settlement on that day. After numerous follow-up discussions coordinated by Judge Politan, an agreement in principle was reached to settle the case a few weeks after the mediation.

### B.  Reasons for the Settlement

Lead plaintiffs, through their counsel, litigated this case and engaged in arm's length negotiations with defendants, through their counsel, based upon a thorough understanding of the strengths and weaknesses of the claims alleged. This understanding is based, in part, on lead counsel's extensive investigation during the prosecution of this action which has included, *inter alia*: (i) interviews with former Opteum employees and other persons with knowledge and information of plaintiffs' claims; (ii) review and analysis of the public filings of Opteum, including its filings with the SEC; (iii) review and analysis of news articles, press releases,

announcements, and analysts' reports by and relating to Opteum; (iv) research of the applicable law with respect to the claims asserted in the action and the potential defenses thereto; (v) consultation with damages and economics experts; and (vi) consultation with professional investigators. In addition, lead plaintiffs became fully aware of defendants' factual and legal positions through the various motions to dismiss and pleadings that they filed, the parties' mediation briefs, and mediation discussions. Plaintiffs thus undertook settlement negotiations and entered into the stipulation with a detailed understanding of the strengths and weaknesses of the claims. Furthermore, the settlement negotiations included formal mediation before an experienced and respected mediator.

Defendants have denied and continue to deny each and all of the claims and contentions alleged by plaintiffs in the case. Nevertheless, defendants have concluded that it is desirable to fully and finally resolve this litigation in the manner and on the terms set forth in the stipulation. For defendants, resolution of the litigation limits further expense and inconvenience with respect to the matters at issue in this case. Defendants have also taken into account the uncertainty and risks inherent in any litigation. Based on this assessment, defendants determined that it is desirable and beneficial to settle this litigation as set forth in the stipulation.

Plaintiffs and lead counsel submit that the proposed stipulation is sufficiently within the range of possible approval to warrant granting this motion for preliminary approval of the settlement. Indeed, the settlement represents a significant all-cash compensation for the class and will eliminate the significant risk that continued litigation may result in a smaller recovery or possibly no recovery at all. As a leading authority on class action litigation has explained, "[s]ettlement of complex litigation is encouraged by the courts and favored by public policy. Securities suits readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning up to a decade or more." 7 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 22.92 at 407 (4th ed. 2008) (internal footnote omitted).

## III.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

### A. Factors to be Considered by the Court in the Preliminary Approval of a Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires court approval for any proposed class

settlement in a class-action context. Fed. R. Civ. Pr. 23(e); *In re Sunbeam Securities Litigation*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) (citing *Piambino v. Bailey*, 757 F.2d 1112, 1139-42 (11th Cir.1985)); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 537 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). The decision of whether to approve a proposed settlement is within the discretion of the court. Indeed, the court is vested with broad discretion when approving a settlement. *See generally id.* In determining whether to approve the settlement, the court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Id.* at 538; *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits."). Settlements of large and complex cases particularly warrant this judicial approach:

> This policy has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice, for a just result is often no more than an arbitrary point between competing notions of reasonableness.

*Behrens*, 118 F.R.D. at 538 (internal citations and quotations omitted). *See also In re Sunbeam,* 176 F. Supp. 2d at 1329. Indeed, the promotion of fair, adequate, and reasonable settlements is a fundamental tenet of litigation in the federal courts. *See, e.g., McDermott, Inc. v. Amclyde*, 511 U.S. 202, 211 (1994). There is a strong initial presumption that the compromise is fair and reasonable. *Hernandez v. Tropical Const. & Maintenance Corp.,* 2007 WL 1201143 (M.D. Fla., April 23, 2007); *Ferguson v. Upscale Saturday Night, Inc.*, 2007 WL 2774196 (M.D. Fla., September 6, 2007).

According to the Manual for Complex Litigation, the process for approving a settlement in the class action context is as follows:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) hearing is given to the class members.

*See* Manual for Complex Litigation (Fourth) §§ 21.632-21.633 at 320-321 (2004).

"Approval of a class action settlement involves a two-step process. First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel. Second, if the Court determines that the settlement is fair, the Court directs that notice

pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)[1]. Preliminary approval of a class action settlement does not require the Court to make a *final* determination that the settlement is fair, adequate, and reasonable: That decision is made only at the final approval stage, after notice of the settlement is provided to class members and they have had an opportunity to voice their views or to exclude themselves from the settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice,* 23.83[1], at 23-336.2 to 23-339 (3d ed. 2001). The Court should simply factor in whether there is a probability that the settlement could be finally approved, and "determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Carnegie v. Household Int'l, Inc.*, 371 F. Supp. 2d 954, 955 (N.D. Ill. 2005).

Second, "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, [and it] appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing . . ." *Figueroa v. Sharper Image Corp.,* 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) (citing Newberg on Class Actions at § 11.25). Therefore, at this stage, the sole issue before the court is whether the settlement is within the range of what could be found to be fair, adequate, and reasonable, so that notice should be given to the proposed class, and a hearing scheduled to consider final approval.

Here, as detailed below, the proposed settlement satisfies the standard for preliminary approval as it is within the range of possible approval and there are no grounds to doubt its fairness or adequacy. The indicia of procedural fairness are present here, including arms'-length negotiations by competent counsel and an immediate benefit to class members, instead of the possibility of a smaller recovery or no recovery at all after further litigation. In fact, significant hurdles (including the motion for class certification and dispositive motions) await lead plaintiffs

---

[1] The Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit prior to 1981 in *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207, 1209 (11th Cir.1981).

and the class but for the settlement. Lead plaintiffs believe that the settlement is fair and in the best interest of the settlement class. Therefore, lead plaintiffs submit that the foregoing factors support preliminary approval of the settlements.

     **B.  Terms of the Settlement and Proposed Schedule of Events**

The parties have entered into an agreement which resolves the litigation as to the settling defendants. The settlement provides for a benefit to the class in the amount of two million, three hundred fifty thousand dollars ($2,350,000) in cash. *See* Miller Decl., Ex. 1 at ¶ 1.32. If the Court grants preliminary approval, it will be necessary to set a hearing date for final approval of the settlement. *See Id. at* Exhibit A, (the preliminary approval order). The settling parties request that the Court select a final hearing date that provides enough time for the notice to be disseminated to the class, to receive any comments concerning the settlement from the class members, and for lead plaintiffs' counsel to submit their papers in support of final approval of the settlement as well as for reimbursement of fees and expenses.

Once the preliminary approval order has been signed, lead plaintiffs respectfully request that the Court set the following schedule for key events pertaining to the proposed settlement:

| EVENT | TIME FOR COMPLIANCE | SUGGESTED DATE |
| --- | --- | --- |
| Motion for Preliminary Approval Filed | Day 0 | August 4, 2010 |
| Class Action Fairness Act ("CAFA") Notice to be Issued | Day 10 | August 13, 2010 |
| Filing of Papers In Support of Settlement, Plan of Allocation and application of Plaintiff's Co-Lead Counsel for attorney fees and expenses | 35 Days before Settlement Fairness Hearing (*See* Preliminary Approval Order at ¶17) | October 8, 2010 |
| Deadline for Co-Lead Counsel to File Affidavit of Notice Mailing and Publication | 35 Days before Settlement Fairness Hearing (*See* Preliminary Approval Order at ¶6(c)) | October 8, 2010 |
| Deadline for submitting exclusion requests or objections | 28 Days before Settlement Fairness Hearing (*See* Preliminary Approval Order at ¶¶13, 14) | October 15, 2010 |

| Deadline for Co-Lead Counsel and/or Defendants' Counsel to file and serve materials responding to any objection filed | 14 Days before Settlement Fairness Hearing (*See* Preliminary Approval Order at ¶17) | October 29, 2010 |
|---|---|---|
| Final Approval Hearing Date | Day 100 (*See* Preliminary Approval Order at ¶5) | November 12, 2010 |
| Deadline for Class Members' Submission of Proof of Claim and Release Forms | Day 110 (*See* Preliminary Approval Order at ¶10) | November 22, 2010 |

As provided for in the preliminary approval order at ¶ 6(a)-(b), not later than 14 days after the preliminary approval order is entered, lead counsel will cause a copy of the notice and the claim form to be mailed by first class mail to all class members who can be identified with reasonable effort: And not later than 21 days after the preliminary approval order is entered, lead counsel will cause the publication notice to be published on the internet *via* the PR Newswire or BusinessWire on three business days. This schedule is similar to those used and approved by numerous courts in class action settlements and provides due process to the class members with regard to their settlement rights.

### C.  The Proposed Settlement is Fair and Warrants the Court's Preliminary Approval

The Eleventh Circuit has identified six factors that district courts should consider in determining whether a settlement if fair, reasonable, and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring*, 737 F. 2d 982, 986 (C.A. Fla. 1984). With respect to the substance and amount of opposition to the settlement, class members have not yet had the opportunity to review the terms of the settlement. Therefore, lead counsel will advise the Court of the class members' reaction to the settlement following completion of the notice process, as part of the analysis presented in support of final approval of the settlement. A preliminary evaluation of the other considerations demonstrates that the settlement should receive preliminary approval.

### 1.  Lead Plaintiff's Likelihood of Success at Trial

The ability to avoid the risk, uncertainty, expense, complexity, and likely duration of further litigation should be considered by the Court in reviewing this motion. It is well settled that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992) (citations omitted). While lead plaintiffs were prepared to go to trial against the defendants, and remain confident in their ability to ultimately prove their claims, a trial is always a risky proposition. *See Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-2152-CIV-GOLD, 2003 U.S. Dist. LEXIS 27238 , at *5 (S.D. Fla. May 30, 2003) ("the risks associated with proceeding to trial in […] complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement"). Here, even though lead plaintiffs ultimately defeated in part defendants' motion to dismiss, lead plaintiffs still face risks in litigating this action to a verdict, which would require that plaintiffs prevail at summary judgment, class certification, and trial. Plaintiffs face particular risks with respect to proving scienter as to each of the defendants and the full amount of damages sustained by the class, as well as the possible difficulty of responding to a negative causation argument by Defendants.

Plaintiffs and lead counsel recognize the significant risks and uncertainty involved in pursuing plaintiffs' claims through summary judgment, trial, and subsequent appeals. *See, e.g., Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 308 (2d Cir. 1979) (reversing $87 million judgment after trial), *cert. denied*, 444 U.S. 1093 (1980); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified by*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145 million judgment after years of appeals); *Robbins v. Kroger Props. Inc.*, 116 F.3d 1441 (11th Cir.), *reh'g en banc denied*, 129 F.3d 617 (11th Cir.1997) (finding no loss causation and overturning $81 million jury verdict). Moreover, plaintiffs and lead counsel are mindful of the issues of proof under, and possible defenses to, the violations of securities laws alleged.

Under these circumstances, the proposed settlement balances the risks, costs, and delay inherent in complex cases evenly with respect to all parties. Thus, the benefits created by the settlement weigh in favor of granting the motion for preliminary approval. Further, under the proposed settlement, defendants will cause to be paid $2,350,000.00 in exchange for the release of claims against defendants. Plaintiffs respectfully submit that, considering the risks of

continued litigation and the time and expense which would be incurred to prosecute the action through a trial, the settlement represents a meaningful recovery at this time that is indisputably in the best interests of the class.

### 2. The Range of Possible Recovery; the Point in the Range of Recovery at Which the Settlement is Fair, Adequate, and Reasonable; and the Complexity, Expense, and Duration of Litigation

"Particularly in class action suits, there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Part of that complexity lies in the calculation of damages and determining the range of possible recovery, an issue which generally requires expert testimony and invariably leads to a "battle of the experts" at trial. Here, plaintiffs' experts have calculated damages attributable to all alleged drops in the Company's stock to be approximately $26.8 million. Defendants have denied and continue to deny that the class suffered any damages at all. Indeed, plaintiffs acknowledge that at trial, recoverable damages could be significantly less if the Court determined that some part of the alleged stock decline was attributable to factors other than the alleged violations of securities laws. The range of possible recovery here is therefore wide and currently indeterminate, a factor which militates in support of a settlement which secures immediate compensation for the class. Furthermore, this settlement represents nearly 9% recovery for the class, which plaintiffs propose is an excellent result in further support of the fairness, reasonableness, and adequacy of the settlement given that many of plaintiffs' claims have already been dismissed and plaintiffs still face significant hurdles in the prosecution of this action. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (C.A. N.Y. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re Telik, Inc. Securities Litigation*, 576 F.Supp.2d 570, 580 (S.D. N.Y. 2008) (in a case in which plaintiffs face challenges, "almost any amount could be deemed reasonable[.]").

Moreover, "complexity, expense and duration of the litigation" as a whole weigh heavily in favor of approving a settlement. *Bennett*, 737 F.2d at 986. *See Woodward v. Nor-Am Chem. Co.*, No. 94-0780-CB-C, 1996 U.S. Dist. LEXIS 7372, at *61 (S.D. Ala. May 23, 1996) (settlements "alleviate the need for judicial exploration of [...] complex subjects, reduce

litigation cost, and eliminate the significant risk that individual claimants might recover nothing."). Plaintiffs' claims involve numerous complex legal and financial issues, including complicated accounting practices such as the application of accounting policies in accordance with GAAP, application of SFAS No. 133, and the technical aspects of mortgage-backed security portfolio assets. The accounting issues alone would require extensive expert discovery and testimony, adding considerably to the complexity, expense, and duration of the action. In addition, the costs and risks associated with litigating this action to a verdict would be high, and the process would require many hours of the Court's time and its resources. Clearly, the settlement enables the class to recover now a meaningful sum of money in circumstances where it would otherwise not recover for years, if at all.

### 3. The Stage of Proceedings at Which the Settlement Was Achieved

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. At a minimum, the court must possess sufficient information to raise its decision above mere conjecture." Newberg & Conte, NEWBERG ON CLASS ACTIONS §11.45 (3d ed. 1992). *See also Woodward*, 1996 U.S. Dist. LEXIS 7372, at *64.

The volume and substance of plaintiffs' knowledge of this action are unquestionably adequate to support the settlement. Plaintiffs have litigated this action for nearly three years, passing the significant hurdle of the motion to dismiss, and have entered into the settlement with a clear understanding of the strengths and weaknesses of their claims based on: (i) an extensive investigation, including interviews with former Opteum employees; (ii) research of the law with regard to the claims asserted in the action and the possible defenses thereto; (iii) consultations with damage experts and forensic accountants; (iv) briefing of defendants' motion to dismiss; and (v) months of hard-fought arm's-length negotiations with Opteum and underwriter defendants, including a mediation with Opteum before an experienced mediator. The stage of proceedings and resulting full development of all parties' understanding of their respective strengths and weaknesses further support the Court's granting of preliminary approval of the settlement.

## IV.   THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23(a)

One of the court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Fed. R. Civ. P. 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). Fed. R. Civ. Pr. 23(a) sets forth four prerequisites to class certification, commonly referred to as: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy. In addition, the class must meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23. In general, Courts have followed a "policy of liberal construction of Rule 23 in the context of federal securities fraud actions." *In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 687, 693 (N.D. Ga. 2002). This action is no exception, and plaintiffs submit that the class satisfies each of the requirements as set forth below

### A.   Numerosity and Commonality

The class meets the numerosity and commonality standards of Rule 23(a)(1)-(2). First, the number and location of putative class members is such that it is impracticable to join all of the class members in one lawsuit. *See In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 685 (N.D. Ga. 1999) (plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class"). Throughout the class period, Opteum common stock was actively traded on the New York Stock Exchange, and plaintiffs therefore believe beneficial holders to number in the thousands. *See Theragenics*, 205 F.R.D. at 694 (numerosity is "generally presumed when a claim involves nationally traded securities").

Second, commonality is met because substantial questions of law and fact are common to all class members (*e.g.*, whether statements made by defendants to the investing public during the class period misrepresented material facts about the business, operations, and management of Opteum and whether defendants acted knowingly or recklessly in issuing these statements). *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 491 (S.D. Fla. 2003) (finding commonality requirement to be met where, "like many other similar securities cases in this Circuit," the allegations involved a "unified scheme to defraud investors through misrepresentations and omissions of information and because several common questions of law exist"). Nothing in plaintiffs' analysis of the claims and defenses in this case suggests that there are substantial differences between the interests of the class members, and their claims all spring from a common source. The commonality requirement is therefore met.

### B.  Typicality and Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(3) further requires that the proposed representative's claims be "typical" of the claims of the class. Plaintiffs' claims here are "typical" of other class members' claims because they arise out of the same alleged conduct. Plaintiffs alleged that they, like the other class members, purchased and/or acquired Opteum securities at prices that were inflated because defendants, in violation of the federal securities laws, issued materially false and misleading statements during the class period. The Supreme Court has recognized that the commonality and typicality analyses "tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). *See, e.g.*, *Theragenics*, 205 F.R.D. at 695 (finding typicality to be satisfied where each class member and proposed class representative alleged Section 10(b) violations and purchased stock at prices inflated by defendants' misrepresentations).

Rule 23(a)(4)'s adequacy requirement is also met in this action because the proposed class representatives will fairly and adequately protect the interests of the class. The adequacy requirements of Rule 23(a)(4) may be divided into two separate prongs: (i) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and (ii) whether plaintiffs have interests antagonistic to those of the rest of the class. *Kirkpatrick v. J.C. Bradford & Co*., 827 F.2d 718, 726 (11th Cir. 1987), *cert. denied,* 485 U.S. 959 (1988).

As discussed herein, the settlement is the product of arm's-length negotiations by experienced counsel, undertaken in good faith after substantial factual investigation and legal analysis. *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 460 (S.D. Fla. 2002). Here, lead counsel have considerable experience, having successfully prosecuted many securities and complex class actions in courts throughout the United States. *See* Miller Decl. Exhibits 2-3, firm resumes of KSF and Brower Piven. Further, prior to reaching the settlement, lead counsel undertook an extensive investigation, drafted a detailed amended complaint, and fully briefed defendants' motion to dismiss. By the time settlement discussions began, lead counsel were clearly informed of the strengths and weaknesses of plaintiffs' claims and were able to use this knowledge to engage in a rigorous, lengthy negotiation process with defendants. Therefore, plaintiffs respectfully submit their chosen counsel are skilled and experienced litigators who have, entirely without remuneration to this point, invested considerable time, out-of-pocket expense, and expertise in the pursuit of this litigation. They are clearly qualified,

experienced, and generally able to conduct the proposed litigation.

Furthermore, lead counsel have conducted all aspects of this litigation, including the negotiations leading up to this settlement, diligently and in good faith. In the absence of evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. Newberg & Conte, NEWBERG ON CLASS ACTIONS §11.28, at 11-59 (3d ed. 1992) (counsel are "not expected to prove the negative proposition of a noncollusive agreement"). Courts also recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration. "The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Carnegie v. Johnson*, No. CV-99-S-3292-NE, 2004 U.S. Dist. LEXIS 29404, at *70 (N.D. Ala. Nov. 23, 2004) (quoting *Cotton*, 559 F.2d at 1330). Lead plaintiffs' counsel, after extensive investigation and thorough analysis, believe this settlement to be in the best interests of plaintiffs and the class.

In further support of plaintiffs' adequacy, plaintiffs submit that they have no conflicts of interest with the class. A party's interests will only be deemed antagonistic to those of the rest of the class if the conflict is fundamental - going to the specific issues in controversy. 1 Newberg & Conte, NEWBERG ON CLASS ACTIONS §3.25 at 3-319 to 141; §3.26 at 3-143 to 144 (3d ed. 1992). Here, there is no question of adverse interests: indeed, given that plaintiffs' claims are typical of the class and plaintiffs are subject to no unique defenses, it is difficult to identify any way in which plaintiffs' interests could be adverse to those of the class.

Plaintiffs therefore respectfully propose that the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are fully met in this action.

## C. Predominance of Common Issues and Superiority of the Class Action Mechanism

In addition to satisfying the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the three subparts of Rule 23(b). Pursuant to Fed. R. Civ. P. R. 23(b)(3), the Court must consider: (1) whether issues of law or fact common to class members predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As demonstrated above, this litigation involves both questions of law and fact common to the class. For predominance, "[i]t is not necessary that all questions of fact or law be common,

but only that some questions are common and that they predominate over individual questions." *Theragenics*, 205 F.R.D. at 697. However, "issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of W. Palm Beach,* 875 F.2d 1546, 1558 (11th Cir.1989). Lead plaintiffs proffer that there are no significant – let alone predominant – individual issues in this case. Indeed, it is difficult to discern any liability issues not common to class members. Where, as here, class members are subject to the same alleged misrepresentations and omissions, and where, as here, it is alleged that defendants' misrepresentations were part of a common course of conduct, common questions predominate. If lead plaintiffs and each class member were to bring individual actions, they would each be required to prove the same wrongdoing by defendants in order to establish liability. *See In re BellSouth Corp.,* 2006 WL 870362, *4 (N.D. Ga., April 3, 2006) (finding the class action to be superior method for litigating a federal securities action because "prosecution by individual shareholders would be prohibitive from both the individual plaintiff's and the court's perspectives").

The class action device is also the superior method for resolving the claims in this action. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities law. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that "[m]ost of the plaintiffs would have no realistic day in court if a class action were not available").

The alternative to certifying the class for settlement purposes would be to unleash hundreds, if not thousands, of individual actions into the judicial system, which could result in varying adjudications of liability, or risk that many class members would be unable to seek redress because they could not afford to proceed on an individual basis. The cost and expense of such individual actions, when weighed against the individual recoveries obtainable, would be prohibitive.

Further, certification of the class for settlement purposes is the superior method for resolving the claims of lead plaintiffs and class members. Without the settlement class device, the defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the stipulation. Moreover, certification of the class for settlement purposes

will allow the settlement to be administered in an organized and efficient manner. In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should certify this class for settlement purposes.

### D.  Lead Plaintiffs' Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1)(A) states that "a court that certifies a class must appoint class counsel." Fed. R. Civ. Pr. 23(g)(1)(A). Lead plaintiffs' counsel satisfies the requirements of Rule 23(g) and should be appointed as class counsel. As discussed above, KSF and Brower Piven have fairly and adequately represented the class, and will continue to do so. Proposed class counsel are knowledgeable about the applicable law, are experienced in handling class actions, have performed substantial work in vigorously pursuing the class' claims here, and have committed substantial resources to representing the class. *See* Fed. R. Civ. Pr. 23(g)(1)(B).

## V.   THE PROPOSED FORMS OF NOTICE TO CLASS MEMBERS ARE ADEQUATE

The Parties have negotiated the form of the notice and the publication notice to notify the settlement class of the terms of the settlement, the settlement class members' rights in connection with the settlement, and the date of the settlement fairness hearing for final approval by the Court. The Court should approve the form and content of the proposed notice and publication notice. *See* exhibits A-1 and A-3 annexed to the proposed preliminary approval order and stipulation. Each is written in clear, straight-forward language, and employs a format that clearly sets out relevant information. Consistent with Rules 23(c)(2)(B) and 23(e)(B), the notice objectively and neutrally apprises class members of the nature of the action, the definition of the class sought to be certified, the claims and issues, that class members may enter an appearance through counsel if desired, that the Court will exclude from the class any member of the class who requests exclusion (and sets forth the procedures and deadline for doing so), and the binding effect of a judgment on class members under Rule 23(c)(3). Fed. R. Civ. Pr. 23(c)(2)(B); Fed. R. Civ. Pr. 23(e)(B).

The notice also satisfies the separate disclosure requirements imposed by the Private Securities Litigation Reform Act ("PSLRA"). The notice: (i) states the amount of the settlement proposed to be distributed to the parties, determined in the aggregate and on an average per share basis; (ii) provides a statement from each party concerning the issues about which the parties disagree; (iii) states the maximum amount of attorneys' fees and expenses (both on an aggregate

and average per share basis) that lead plaintiffs' counsel will seek, with a brief explanation supporting such fees and expenses; (iv) provides the names, addresses, and a telephone number for lead plaintiffs' counsel, who will be available to answer questions from class members; (v) provides a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) includes a cover page summarizing all of this information. *See* 15 U.S.C. § 78z1(a)(7).

Along with the notice, settlement class members will receive a claim form on which to provide the purchase and sale information for their Opteum common stock. Class members who wish to share in the settlement proceeds will complete and mail their claim forms to The Garden City Group, Inc., the administrator retained by lead counsel to administer the claims process in this settlement.

The parties have agreed to use the traditional methods for notifying settlement class members of the settlement: notification by mail and by publication in an online investor-oriented publication with national coverage. Upon entry of the preliminary approval order, the administrator will mail the notice and the claim forms to settlement class members who can be identified from stock transfer records provided by defendants. Lead counsel will cause the publication notice to be published on the internet for three days via the PR Newswire or Businesswire. Notice by mail to class members who can reasonably be identified and by publication satisfies the requirements of due process in this type of litigation. *See, Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1287 (11th Cir. 2007).

The preliminary order provides that nominees who purchased Opteum common stock on behalf of beneficial owners shall send the notice and proofs of claim to those beneficial owners upon the receipt of such documents. (Preliminary approval order ¶ 8). This provision ensures that brokers or other entities who purchased Opteum common stock for others will forward the documents to the beneficial owners, who are the appropriate signatories to the claim forms.

Additionally, both the proposed notice and publication notice will disclose the date, time, and location of the settlement fairness hearing and the procedures and deadlines for the submission of claim forms and objections to any aspect of the settlement, plan of allocation, or attorneys' fees and expenses to be sought by lead plaintiffs' counsel. These disclosures are thorough and should be approved by the Court. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000) (approving notice which identified the settlement terms, the plan of allocation, the estimated potential recovery at trial, the maximum request for attorney's

fees and the contact information of relevant attorneys). Rule 23(c)(2)(B) requires certified classes to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." This applies to "a settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e). The proposed notice plan readily meets these standards.

Upon notification of the settlement, class members have three choices: (1) approve the settlement and share in the settlement proceeds by submitting a claim form; (2) exclude themselves from the settlement by opting out of the class, in which case they will not participate in the settlement recovery and will retain their individual claims against defendants; or (3) disapprove of the settlement, the plan of allocation, and/or the application for attorneys' fees and expenses by objecting to their terms. To participate in the settlement, class members must submit their claim forms within the time specified in the preliminary approval order and identified in the notice. Class members who wish to exclude themselves from the settlement must submit a timely request for exclusion. Class members who wish to object to the settlement must serve a notice of objection and, if applicable, a notice of their intention to appear at the settlement fairness hearing and object. Lead counsel shall be responsible for filing with the Court any objections that have not been withdrawn not later than seven days prior to the settlement fairness hearing. If they choose, objectors may submit a memorandum of law in opposition to the settlement and can appear before the Court at the Fairness Hearing. Therefore, plaintiffs submit that this notice program clearly satisfies the requirements of Rule 23 and due process and should be approved by the Court.

## VI.    CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court enter the proposed preliminary approval order, granting: (i) preliminary approval of the settlement; (ii) certification of the class for purposes of settlement; (iii) approval of the form and manner of giving notice of the settlement to the class; and (iv) approval of the proposed schedule for the dissemination of the notice and other proceedings required for the Court's consideration of the settlement prior to the settlement fairness hearing at the discretion of the Court and counsel.

Dated:  August 4, 2010

/s/ *Joseph E. White, III*

SAXENA WHITE PA
Maya Saxena
Joseph E. White, III
Christopher S. Jones
Lester R. Hooker
2424 North Federal Highway, Suite 257
Boca Raton, Florida 33431
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

*Additional Counsel for the Class*

Kim E. Miller (admitted *pro hac vice*)
KAHN SWICK & FOTI, LLC
500 5th Ave, Suite 1810
New York, NY 10110
Telephone: (212) 696-3730

Lewis Kahn (admitted *pro hac vice*)
KAHN SWICK & FOTI, LLC
205 Covington Street
Madisonvile, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

David A.P. Brower
BROWER PIVEN, A Professional Corp.
488 Madison Avenue, 8th Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

*Lead Counsel for Lead Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 4, 2010, I presented the foregoing to the Clerk of

the Court for filing and uploading to the CM/ECF system.


*/s/ Joseph E. White, III*
Joseph E. White, III